**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Stacy Diane COYOTE, Defendant–Appellant.**

**No. 91–7025.**

United States Court of Appeals, Tenth Circuit.

April 21, 1992.

Before SEYMOUR and BRORBY, Circuit Judges, and BROWN,* District Judge.

BRORBY, Circuit Judge.

Ms. Coyote [2] was indicted and convicted of three felony crimes: Conspiracy to possess and distribute methamphetamine; use of a communication facility to facilitate the distribution of methamphetamine; and possession with intent to distribute methamphetamine.

By way of background, Ms. Coyote was living with Mr. Stanberry. An undercover policeman began purchasing methamphetamine from Mr. Stanberry and, occasionally, these transactions occurred at Mr. Stanberry's residence. On one occasion, during Mr. Stanberry's absence, Ms. Coyote helped Mr. Russell, a co-conspirator, find the hidden inventory of methamphetamine in order to complete a drug transaction with the undercover officer. In August 1990, a parcel containing one pound of methamphetamine was mailed from California to Ms. Coyote at Mr. Stanberry's address. Mr. Stanberry procured his methamphetamine from California. Concerned that the package was late, Ms. Coyote went to the Post Office to inquire whether the package had arrived. Mr. Stanberry ultimately received the parcel and displayed it to Ms. Coyote. Shortly thereafter, the police, armed with a search warrant, searched the residence but the parcel was not found. Ms. Coyote informed the police the parcel had been burned; however, no evidence of the burned parcel was ever found. Further evidentiary matters will be discussed as necessary in this opinion.

Ms. Coyote raises four issues which we will discuss separately.

Joseph F. Wilson, Asst. U.S. Atty., Muskogee, Oklahoma, on the brief for plaintiff-appellee.

Greg Thomas, Muskogee, Okl., on the brief for defendant-appellant.

---

2. Ms. Coyote was a co-defendant of Mr. Russell, whose conviction we affirmed in *United States v. Russell,* 963 F.2d 1320 (10th Cir.1992), and Mr. Stanberry, whose conviction and sentence we affirmed in *United States v. Stanberry,* 963 F.2d 1323 (10th Cir.1992).

---

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

## I.

### Motion to Quash the Indictment

Ms. Coyote filed a motion to quash the indictment asserting, pro se, that methamphetamine is not a controlled drug which subjects her to prosecution. In support of this motion, she cited 21 U.S.C. § 811(g)(1) which provides that the Attorney General shall exclude any non-narcotic substance from a schedule if under the Food, Drug and Cosmetic Act the substance may be lawfully sold over the counter without a prescription. Ms. Coyote argued that Rynal and Vicks inhaler nose sprays contain methamphetamine isomers and therefore methamphetamine cannot be a controlled substance. The district court denied the motion to quash the indictment. Ms. Coyote asserts this ruling was in error.

■ *United States v. Youngblood,* 949 F.2d 1065 (10th Cir.1991), is dispositive of this issue. In *Youngblood,* we disposed of the identical argument, holding methamphetamine has not been approved for over-the-counter sales and is properly classified as a controlled substance. *Id.* at 1066. For a similar holding, *see United States v. Kendall,* 887 F.2d 240, 241 (9th Cir.1989).

## II.

### Sufficiency of the Conspiracy Evidence

Ms. Coyote asserts there is insufficient evidence to sustain her conspiracy conviction.

■ We employ the following standard when reviewing a claim of insufficient evidence: Whether, on the basis of the whole record, the direct and circumstantial evidence together with the reasonable inferences to be drawn therefrom, are sufficient if, when taken in a light most favorable to the Government, a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *United States v. Cox,* 929 F.2d 1511, 1514 (10th Cir.1991). The evidence in a drug conspiracy case must prove that two or more persons agreed to violate the federal narcotics laws, that the defendant knew at least the essential objectives of the conspiracy, and that the defendant knowingly and voluntarily became a part of the conspiracy. *United States v. Savaiano,* 843 F.2d 1280, 1294 (10th Cir.1988).

■ Reviewing the record in accordance with these standards, we find that: Ms. Coyote was living with Mr. Stanberry; Mr. Stanberry regularly conducted illegal drug sales from his residence; Ms. Coyote knew where the inventory of methamphetamine was hidden; and on at least one occasion, she facilitated a sale in the absence of Mr. Stanberry by telling Mr. Russell where the methamphetamine inventory was hidden. Ms. Coyote thereby participated in the transaction by assisting both Mr. Stanberry and Mr. Russell. Without the knowledge and knowing assistance of Ms. Coyote, the illegal drug transaction would not have been consummated. The inference is Mr. Stanberry told Ms. Coyote the drug location and she knew Mr. Russell had permission to take the drug. In addition, the record reveals that various items of drug paraphernalia used in the preparation and concealment of illegal drugs were seen in Ms. Coyote's residence in 1988 and were seized pursuant to a warrant in 1990. Furthermore, the evidence shows that Ms. Coyote received her mail at Stanberry's residence and on August 11, 1990 she inquired of the postmaster whether she had received a parcel from California, indicating she was expecting it that morning. Mr. Stanberry had been receiving his inventory of methamphetamine from California. Three days later, Ms. Coyote left a note in the mailbox for the mail carrier stating she was expecting a package and it was late. On this same date the postal service, accompanied by an undercover officer, made a controlled delivery of the package from California containing one pound of methamphetamine. Mr. Stanberry received the package and displayed it to Ms. Coyote. When the police arrived and inquired about the package, Ms. Coyote responded: "What package?" Later, she said the package had been burned and denied contacting the Post Office. The residence was under surveillance from before the package was delivered until the police arrived and no smoke was observed. The police searched and

could find no evidence of the package having been burned. The answers given by Ms. Coyote were therefore evasive and untruthful leading to an inference she knew the contents of the parcel and was hiding her participation.

■ Proof of knowledge of illegal activity or mere presence at the crime scene, standing alone, are not sufficient to establish a conspiracy beyond a reasonable doubt. However, knowledge and presence coupled with knowing participation in the illegal drug activities are sufficient to sustain a drug conspiracy. Here, the jury was entitled to conclude from the evidence that Ms. Coyote was a willing and knowing participant in the conspiracy.

### III.

#### Sufficiency of the Possession of Methamphetamine Evidence

Ms. Coyote asserts the evidence was insufficient to demonstrate beyond a reasonable doubt she possessed methamphetamine. The methamphetamine Ms. Coyote was charged with possessing was the one pound originally contained in the package from California addressed to her and delivered to her residence. Ms. Coyote asserts there is no evidence she possessed or controlled the illegal drugs; rather, she asserts the evidence shows the only person having possession and control was Mr. Stanberry.

■ The flaw in Ms. Coyote's argument is her failure to acknowledge potential guilt as an aider and abettor. While Ms. Coyote was charged as a principal, she was found guilty of the offense through aiding and abetting after the jury was instructed on aiding and abetting concerning this charge. Title 18, § 2 of the United States Code provides that whoever aids or abets in the commission of a crime is punishable as a principal. It is established law that an aider and abetter is guilty as a principal.

■ "The government's burden on the aiding and abetting of a criminal offense is to [prove] defendant 'wilfully associated' [in a] positive way," *United States v. Zamora,* 784 F.2d 1025, 1031 (10th Cir.1986),

and "[i]t is not necessary [for this evidence] to exclude every hypotheses of innocence." *Id.* at 1031. The evidence before us is sufficient to enable a jury to find defendant guilty beyond a reasonable doubt.

### IV.

#### The Government's Authority to Open and Inspect

Ms. Coyote asserts the methamphetamine found in the package addressed to her from California should not have been admitted into evidence as the Government failed to show its authority to open and inspect the package.

Ms. Coyote was arraigned before a United States Magistrate Judge with counsel. The magistrate judge ordered all motions to be filed within ten days. Ms. Coyote never filed a motion to suppress.

At trial, a postal inspector testified the package was a fourth class parcel that had broken open at the bulk mail center in Dallas, Texas. A narcotics detection dog had alerted to the package. As the package was fourth class it was not sealed, which means a postal inspector can open and inspect "if they have a reason to believe the item is not mailable." The postal inspector then obtained a search warrant for the parcel. Upon executing the warrant, the postal inspector found a jar which contained approximately one pound of methamphetamine. After further examination relating to foundation, the Government offered the methamphetamine found in the parcel. Ms. Coyote's counsel stated: "I have [no] objection, Your Honor, on the grounds that objection will have to be developed in further testimony and ask the Court to withhold ruling at the present time." The trial court stated: "Well, show them admitted. I can always change my mind."

During cross-examination, Ms. Coyote's counsel asked that the contents of the parcel be suppressed contending that the package had not broken far enough to see the contents. The trial court asked counsel if the motion came too late and then overruled the motion.

Fed.R.Crim.P. 12(b)(3) requires that motions to suppress evidence be raised before trial. Fed.R.Crim.P. 12(f) provides that the failure to make such motions shall constitute a waiver; however, the trial court "for cause shown" may grant relief from the waiver. "The purpose of the rule requiring that motions to suppress be made prior to trial is to provide orderly proceeding during the trial of a case by eliminating from the trial 'disputes over police conduct not immediately relevant to the question of guilt.'" *Mesmer v. United States*, 405 F.2d 316, 318–19 (10th Cir.1969) (quoting *Jones v. United States*, 362 U.S. 257, 264, 80 S.Ct. 725, 732, 4 L.Ed.2d 697 (1960)).

The trial court's ruling that Ms. Coyote waived her motion to suppress is reviewed for abuse of discretion. *United States v. Smith*, 692 F.2d 658, 662 (10th Cir.1982), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983). The record indicates Ms. Coyote lacked no opportunity to timely make her motion to suppress. Therefore, we find the trial court did not abuse its discretion in concluding Ms. Coyote waived her motion to suppress.

The judgment of the trial court is AFFIRMED.